IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THALIA ALEXIOU | : | CIVIL ACTION |
| v. | : | |
| ANGELO MOSHOS | : | NO. 08-5491 |

**MEMORANDUM AND ORDER**

ELIZABETH T. HEY
UNITED STATES MAGISTRATE JUDGE

In this diversity contract action, Plaintiff Thalia Alexiou seeks contract and other damages against Defendant Angelo Moshos. Thalia and Angelo were sister and brother-in-law, because Thalia was married to Angelo's brother Lazaros Moshos.[1] Thalia alleges that Angelo breached an agreement dated September 15, 2004, pursuant to which Angelo loaned money to Thalia and Lazaros to buy a property in Philadelphia. Presently before the court is Thalia's motion for partial summary judgment ("Doc. 33"), Angelo's response ("Doc. 34"), and Thalia's reply ("Doc. 35"). In her motion, Thalia seeks a judicial determination that a later agreement signed on November 15, 2004, in which she relinquished her contract rights, is void for lack of consideration. For the following reasons, I will grant the motion.

---

[1] As this action concerns a dispute among family members, I will refer to the parties by their first names to avoid confusion. Lazaros died after execution of the agreements at issue.

I.      FACTS AND PROCEDURAL HISTORY

   A.      The September Agreement

On September 20, 2004, Angelo, Thalia and Lazaros signed a one-page agreement (the "September Agreement") regarding "the purchase of the property" at 1001 10th Avenue in Philadelphia, Pennsylvania ("the Property").  See Sept. Agree., attached to Doc. 33 at Ex. D.[2]  The agreement provided that Thalia and Lazaros would contribute $90,000, and Angelo would contribute $150,000, towards the purchase of the Property.  Further, Thalia and Lazaros would have three months to secure a mortgage and repay the $150,000 to Angelo, at which time the name on the deed would be changed from Angelo to Lazaros and Thalia.  If Lazaros and Thalia failed to repay Angelo within three months, or if they failed to cover the payments on Angelo's $150,000 mortgage and other expenses for a total of two months, then Angelo would have the right to sell the property and return Lazaros' and Thalia's $90,000 investment.  If the Property sold for less than its purchase price, the "appropriate amount" would be deducted from Lazaros' and Thalia's investment.  The agreement also stated that in the event of Thalia's death, Lazaros would be responsible to repay $70,000 used in the purchase of the property to Yiannis Mavrikakis, who was Thalia's cousin.  See id.; Thalia Dep. at 63; Angelo Dep. at 26.

---

[2]The September Agreement is dated September 15, 2004, but Lazaros and the parties signed it on September 20, 2004.  See Sept. Agree.; Angelo Dep. at 36-37.  The agreement is nominally among Lazaros, Thalia and "Moshos Inc.," although the parties agree that Angelo was the sole owner of Moshos Inc.  See Angelo Dep. at 28.

2

Closing on the Property took place in October 2004, and the Property was placed in Angelo's name.  See Doc. 33 at 2; Angelo Dep. at 14.

### B.     The November Agreement

On November 15, 2004, Lazaros and the parties signed another one-page writing (the "November Agreement") concerning the same transaction.  See Doc. 33 at Ex. E and Doc. 34 at Ex. B.  The November Agreement began by stating that "[t]his agreement voids any previous agreement" among the parties.  The agreement recited certain terms of the September Agreement, and then stated that Thalia "has given up all rights towards the [Property], due to an agreement between Lazaros Moshos and Thalia Alexiou that involved the settlement of another property in Forked River."  The November Agreement further provided that "[t]he previous agreement involving a loan that [Thalia and Lazaros] have taken from Mr. Yiannis Mavrikakais [sic] has been taken care of by Thalia Alexiou and Lazaros Moshos."

According to Thalia, she did not take part in negotiating the November Agreement, and claims that she signed the November Agreement under duress after Lazaros became violent when she was initially reluctant to sign.  See Thalia Dep at 83-84, 97-100.[3]  Thalia concedes that Angelo gave her and Lazaros money several times prior to the events giving rise to the dispute in this case, but says she was unaware of any agreement, written

---

[3]Thalia does not rely on duress as a basis for her summary judgment motion.  See Doc. 33 at 5 n.7.

3

or oral, to repay the money. See id. at 29-33.[4] She also denies that she and Lazaros had any agreement regarding the Forked River property referenced in the November Agreement. See id. at 91-92.

Angelo counters that he frequently loaned money to his brother Lazaros on the understanding that the loans would be repaid, and that he and Lazaros never drafted written loan agreements because of the strong familial bond between them. See Angelo Dep. at 35, 141.[5] According to Angelo, the parties drafted and signed the September Agreement only because Thalia insisted that the agreement for the purchase of the Property be in writing. See id. at 35. When Lazaros and Thalia failed to cover Angelo's mortgage payments on the $150,000 he borrowed as promised in the September Agreement, Angelo could not afford the payments, adding significant stress to his marriage. See Doc. 34 at 3; Angelo Dep. at 57, 66. Consequently, Angelo started "pushing" Lazaros to get his money back on the Property investment, and expressed concern about recovering the money he loaned to Lazaros and Thalia over the preceding years. See Angelo Dep. at 34, 53, 61-62, 86. In response to this "pushing," Thalia and Lazaros proposed "a second letter" (i.e., the November Agreement). See Doc. 33 at 3-4; Angelo Dep. at 61-62. Angelo concedes that his only discussions concerning the

---

[4]Moreover, based on statements allegedly made by Lazaros, Thalia claims that Angelo held approximately $500,000 of Lazaros' money. See Thalia Dep. at 25, 69.

[5]These prior loans are also the subject of Angelo's counterclaim against Thalia. See Amended Answer ("Doc. 6"), at "Counterclaims" ¶¶ 1-10.

November Agreement were with Lazaros, but he alleges that he typed the document in the presence of both Lazaros and Thalia, and that they all discussed the document as it was created.  See Angelo Dep. at 60-72.

### C. The Litigation

On December 19, 2004, Lazaros died in an automobile accident.  See Doc. 28 at ¶ 33.  After Thalia failed to fulfill the contractual obligations set forth in the September Agreement, Angelo sold the Property to a company for $375,000 on or about February 20, 2006.  See id. at ¶ 45; Angelo Dep. at 97.  Angelo did not pay Thalia any money from the sale of the Property.  See Doc. 33 at 5; Angelo Dep. at 99.

Thalia commenced this action in state court seeking to recover the $90,000 she and Lazaros contributed toward the purchase of the Property, plus costs, and Angelo removed it to federal court on November 20, 2008.  See Doc. 1.  In his Answer ("Doc. 2"), Angelo asserted as an affirmative defense that in the November Agreement Thalia released any claims related to the Property.  See Doc. 2, First Affirmative Defense.  Thalia sought and received leave to file an Amended Complaint, which contains the following four counts: unjust enrichment, breach of contract, promissory estoppel, and declaratory relief.  See Doc. 28 at 5-10.  Thalia now seeks partial summary judgment on her claim for declaratory relief (Count IV), arguing that the November Agreement (and any release allegedly contained therein) is void for lack of consideration.

## II. STANDARD FOR SUMMARY JUDGMENT

Summary judgment may be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is "material" if it might affect the outcome of the case under governing law. Id.

The moving party has the initial burden of demonstrating that no genuine issue of material fact exists. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). After the moving party has met its initial burden, the adverse party must set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e). "Speculation, conclusory allegations, and mere denials are insufficient to raise genuine issues of material fact." Boykins v. Lucent Techs., Inc., 78 F.Supp.2d 402, 408 (E.D. Pa. 2000). The evidence presented must be viewed in the light most favorable to the non-moving party. Anderson, 477 U.S. at 255; Lang v. New York Life Ins. Co., 721 F.2d 118, 119 (3d Cir. 1983).

## III. DISCUSSION

### A. Requirements for Valid Consideration Under Pennsylvania Law

Jurisdiction in this case is based on diversity of citizenship. Therefore, the court must apply the choice of law rules of the state whose law governs the action. Hammersmith v. TIG Ins. Co., 480 F.3d 220, 226 (3d Cir. 2007) (citing Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941)). Here, the choice is between Pennsylvania law and, as Angelo suggests in a footnote, New Jersey law. See Doc. 34 at 7 n.12 ("New Jersey law may govern the question of consideration.").[6]

Under conflict of laws rules, the court must first examine whether the laws of the interested states conflict. See Williams v. Stone, 109 F.3d 890, 893 (3d Cir. 1997) ("Under general conflict of law principles, where the laws of the two jurisdictions would produce the same result . . . . There is a 'false conflict' and the court should avoid the choice-of-law question.") (citations omitted). The legal definitions of consideration in Pennsylvania and New Jersey are virtually identical, namely the bargained-for exchange of a promise. Compare Cardamone v. Univ. of Pittsburgh, 384 A.2d 1228, 1232 n.6 (Pa. 1978) ("Valid consideration confers a benefit upon the promisor or causes a detriment to the promisee and must be an act, forbearance or return promise bargained for and given in

---

[6]During the relevant time period, Thalia and Lazaros resided in Pennsylvania and Angelo resided in New Jersey. The Property which is the subject of the two agreements is located in Pennsylvania, and the agreements were both drafted and signed at Angelo's house in New Jersey. Finally, Thalia commenced this lawsuit in Pennsylvania.

exchange for the original promise."), with Coast Nat'l Bank v. Bloom, 174 A. 576, 578 (N.J. 1934) ("The requirement ordinarily stated for the sufficiency of consideration to support a promise is . . . a detriment incurred by the promisee, or a benefit received by the promisor, at the request of the promisor."). Because the applicable law is the same under the law of either state, the court need not and should not reach the choice of law question. See Blackmon v. Iverson, 324 F.Supp.2d 602, 610 n.5 (E.D. Pa. 2003) (citing Williams, 109 F.3d at 893). Therefore, I will look to Pennsylvania contract law and, more specifically, to Pennsylvania law as it relates to consideration, to decide the motion.[7]

Under Pennsylvania law, "whether a contract is supported by consideration presents a question of law." Pennsy Supply Inc. v. Am. Ash Recycling Corp. of Pa., 895 A.2d 595, 601 (Pa. Super. 2006) (citing Davis & Warde, Inc. v. Tripodi, 616 A.2d 1384 (Pa. Super. 1992)). The main inquiry in determining whether two parties have entered into an enforceable contract is "the 'manifestation of assent of the parties to the terms of the promise and to the consideration for it.'" ATACS Corp. v. Trans World Commc'ns, Inc., 155 F.3d 659, 666 (3d Cir. 1998) (citations omitted). Thus, the Third Circuit has enunciated a test to determine whether, under Pennsylvania law, an enforceable contract has been formed: "(1) whether both parties manifested an intention to be bound by the

---

[7]This conclusion is consistent with the fact that both parties primarily rely on Pennsylvania law in their motion papers. See Doc. 33 at 7-13; Doc. 34 at 7-11.

agreement; (2) whether the terms of the agreement are sufficiently definite to be enforced; and (3) whether there was consideration." Id.

The key element at issue in this matter is consideration. "No agreement is enforceable without valid consideration. Valid consideration confers a benefit upon the promisor or causes a detriment to the promisee and must be an act, forbearance or return promise bargained for and given in exchange for the original promise." American Eagle Outfitters, Inc. v. Lyle & Scott Ltd., No. 06-0607, 2008 WL 5101354, at *17 (W.D. Pa. Nov. 26, 2008) (citing Cardamone, 384 A.2d at 1232 n.6), aff'd in part and rev'd in part on other grounds, 2009 WL 2902250 (3d Cir. Sept. 11, 2009)). Consideration is also necessary where parties modify an existing contract. Thus, a contract may be modified "only if both parties agree to the modification and the modification is founded upon valid consideration." J.W.S. Delavau v. E. Am. Transp. & Warehousing, 810 A.2d 672, 681 (Pa. Super. 2002) (citing Corson v. Corson's Inc., 434 A.2d 1269 (Pa. Super. 1981)).

**B.     The November Agreement is Not Supported by Consideration**

Thalia argues that the November Agreement is unenforceable for lack of consideration. See Doc. 33 at 8-13; Doc. 35 at 2-6. Specifically, Thalia argues that no benefit was conferred on her as the promisor, as she gained nothing by her promise to relinquish her rights under the September Agreement, and that Angelo, the promisee, suffered no detriment in exchange for her relinquishing those rights. Id. at 10-11. Angelo counters that the monies he gave to Thalia and Lazaros just prior to and during

9

their marriage were loans rather than gifts, for which Angelo expected to be repaid at some time in the future.  See Doc. 34 at 9.  As a result, Angelo argues that he refrained from taking action to recover these loans as consideration for Thalia's promise to relinquish her right to the Property.  See id. at 7-10.

Angelo's alleged promise to forebear from seeking repayment of the alleged loans is not contained within the four corners of the November Agreement, nor can it be implied from the terms stated therein.  Indeed, Angelo has not identified any evidentiary or testimonial support for his claim that his forbearance in this regard was negotiated, discussed or even contemplated at the formation of the November Agreement, let alone that it was bargained for in exchange for Thalia's agreement to release her rights in the Property.  In the absence of any evidence that Angelo's forbearance constituted a bargained-for exchange, the purported forbearance constitutes a "mere allegation" without "any significant probative evidence tending to support" the claim, which fails to create a disputed issue of material fact.  Anderson, 477 U.S. at 249.

Angelo supports his claim as to the validity of the consideration by noting that Thalia, while denying knowledge of discussions regarding repayment of the purported loans, does not deny that Angelo may be entitled to such repayment.  See Doc. 34 at 5.  According to Angelo, Thalia's knowledge of the money he transferred to Lazaros over the years – monies which also benefitted Thalia – creates a genuine issue of material fact regarding consideration for the November Agreement.  I disagree.  If Angelo had

intended to exchange forbearance from seeking to recover the purported loans for Thalia's agreement to relinquish her rights to the Property, Angelo must have bargained for that exchange. However, there is no evidence of such a bargained-for exchange in the explicit terms of the November Agreement.

Moreover, while Thalia was aware that Angelo had transferred money to her and Lazaros (Thalia Dep. at 25, 33), and while Angelo testified that Thalia was present when he typed the November Agreement (Angelo Dep. at 60), there is no testimonial evidence that Thalia was aware of any agreement on the part of Angelo not to be repaid. In his deposition, Angelo never said or implied that his alleged forbearance from seeking to recover the money served as consideration for Thalia's release of her rights in the Property. Rather, Angelo testified that he discussed his loans with Lazaros only, and that he expected the money he was owed to be repaid by Lazaros, not Thalia. See Angelo Dep. at 62, 65, 145. In addition, Angelo had no specific recollection of discussing terms with Thalia at the time of the November Agreement. See id. at 69-71. Therefore, neither the November Agreement itself nor the testimony creates a material issue of fact as to Angelo's alleged promise to Thalia to forebear.

Angelo's reliance upon Adelvision L.P. v. Groff, 859 F.Supp. 797 (E.D. Pa. 1994) is misplaced insofar as he has misconstrues the legal issues presented in that case regarding the validity of consideration. See Doc. 34 at 7-9. Adelvision stands for the proposition that consideration exists "if the promisee, in return for the promise, does

anything legal which he is not bound to do, or refrains from doing anything which he has a right to do, whether there is any actual loss or detriment to him or actual benefit to the promisor or not." 859 F.Supp. at 805 (emphasis added) (quoting York Metal & Alloys Co. v. Cyclops Steel Co., 124 A. 752, 754 (Pa. 1924)).  Thus, in that case one party's promise to purchase the other's bank loans in exchange for an additional security interest in certain partnership property was supported by consideration, despite the fact that there may have been no additional value to gain from the loans.  In contrast, here Thalia's release of her rights was not bargained for in return for any detriment or forbearance by Angelo.  Accordingly, Thalia's release of her rights is not enforceable.

Angelo is correct that courts do not evaluate the adequacy of the consideration so long as it is a product of a bargained-for exchange, and the cases he relies on support that well-known rule.  See, e.g., 859 F.Supp. at 804 ("Pennsylvania courts have long held that the adequacy of consideration is not a factor to be considered in determining the validity and enforceability of a contract.").  However, what is missing from this case is not the sufficiency or adequacy of Angelo's promise to forebear, but the absence of a bargained-for promise to forebear.

Moreover, the record is devoid of any other consideration to support Thalia's promise.  As previously noted, the November Agreement provides that Thalia agreed to give up all her rights toward the Property "due to an agreement between [Lazaros] and [Thalia] that involved the settlement of another property in Forked River."  Angelo does

not argue that the purported Forked River agreement provides consideration for the November Agreement, see Doc. 34 at 7-10, nor can it. Angelo's deposition testimony indicates that he had limited knowledge of the Forked River property and that he was not involved in any discussion of the agreement between Thalia and Lazaros concerning that property. See Angelo Dep. at 67-69, 78-81, 84-85. Angelo explained that Lazaros told him that he (Lazaros) had arranged to place the Forked River property in Thalia's name and that "you [Angelo] are going to be relieved from any concerns you have from [the Property]." Id. at 79-80, 84. Even if this is an accurate summary of the agreement between Thalia and Lazaros regarding the Forked River property, Angelo played no role in discussing or negotiating the agreement, nor did the agreement cause any detriment to Angelo. Therefore, the purported Forked River agreement between Thalia and her husband cannot be considered a bargained-for exchange as between Thalia and Angelo to serve as consideration for the November Agreement.

In summary, for Angelo's proffered consideration to be valid, in the November Agreement he would have had to relinquish or limit his right to recover the debt that Lazaros and Thalia owed him in return for Thalia's release of her rights under the September Agreement. The record evidences no such bargained-for exchange in the November Agreement, nor any other bargained-for exchange that would cause any detriment to Angelo. As a result, I find that no genuine issue of material fact exists regarding the lack of consideration for the November Agreement, and that the agreement

is therefore invalid as a matter of law.  Therefore, Thalia's motion for partial summary judgment will be granted.

### IV.    **CONCLUSION**

I find that there is no evidence to support Angelo's theory of consideration for the November Agreement.  With consideration lacking, the November Agreement is not a valid contract.  Because I find that no genuine issue of material fact exists in this regard, I will grant Thalia's motion for partial summary judgment on her claim for declaratory relief (Count IV).  An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THALIA ALEXIOU | : | CIVIL ACTION |
| v. | : | |
| ANGELO MOSHOS | : | NO. 08-5491 |

### **ORDER**

AND NOW, this 2nd day of October 2009, after consideration of Plaintiff's motion for partial summary judgment (Doc. 33), Defendant's response (Doc. 34), and Plaintiff's reply (Doc. 35), it is hereby ORDERED that the motion is GRANTED.

JUDGMENT IS HEREBY ENTERED in favor of Plaintiff and against Defendant as to Count IV of the Amended Complaint.

BY THE COURT:

/s/ ELIZABETH T. HEY

_____
ELIZABETH T. HEY
UNITED STATES MAGISTRATE JUDGE