IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

THALIA ALEXIOU                :        CIVIL ACTION

       v.                     :

ANGELO MOSHOS                 :        NO. 08-5491

**MEMORANDUM AND ORDER**

ELIZABETH T. HEY
UNITED STATES MAGISTRATE JUDGE

     In this diversity contract action, Plaintiff Thalia Alexiou brought suit against

Defendant Angelo Moshos for damages allegedly arising out of his breach of a September

15, 2004, agreement pursuant to which Angelo loaned money to Thalia and her husband,

Lazaros Moshos (Angelo's brother), to buy a property in Philadelphia, Pennsylvania.[1]  On

October 29, 2009, judgment was entered in Angelo's favor, based on the jury's answers to

interrogatories.[2]  Presently before the court are three post-verdict motions and

corresponding responses and replies to those motions – Thalia's Motion for Entry of

Judgment Pursuant to Rule 50(b) (Docs. 53, 66 and 67), Thalia's Motion to Alter or

Amend Judgment Pursuant to Rule 59(c) (Docs. 54, 65 and 68), and Angelo's Motion to

---

    [1]As this action concerns a dispute among family members, I will refer to the parties
by their first names to avoid confusion.  The trial evidence was conflicting as to whether
Thalia and Lazaros were legally married, but this fact is not crucial to the determination
of the motions at issue.

    [2]As will be discussed more fully below, the jury found that Angelo owed Thalia
$90,000 for breach of contract, but that the sum was set-off by $94,000 Thalia owed
Angelo for prior loans he had made to Thalia and Lazaros.

Alter or Amend Judgment and to Tax Costs Against Plaintiff (Docs. 55 and 64). For the following reasons, I will deny Thalia's motions, and grant Angelo's motion only as to the award of costs.

## I.     FACTS AND PROCEDURAL BACKGROUND

Pursuant to the aforementioned agreement, Thalia and Lazaros agreed to contribute $90,000, and Angelo agreed to contribute $150,000, towards the purchase of a property at 1001 10th Avenue in Philadelphia, Pennsylvania. Thalia commenced this action in state court seeking to recover, among other amounts, the $90,000 she and Lazaros contributed toward the purchase of the property, and Angelo removed the matter to federal court on November 20, 2008. See Doc. 1. The matter proceeded to trial on October 26, 2009.

At trial, both Thalia and Angelo testified at length concerning the parties' obligations under the agreement. Trial stipulations and testimony revealed that under the agreement Thalia and Lazaros would have three months to secure a mortgage and repay the $150,000 to Angelo, at which time the name on the deed would be changed from Angelo to Lazaros and Thalia. N.T. 10/26/09 at 29. If Lazaros and Thalia failed to repay Angelo within three months, or if they failed to cover the payments on Angelo's $150,000 mortgage and other expenses for a total of two months, then Angelo would have the right to sell the property and return Lazaros's and Thalia's $90,000 investment. If the property

sold for less than its purchase price, the "appropriate amount" would be deducted from Lazaros's and Thalia's investment.

At the closing in October 2004, the property was placed in Angelo's name. N.T. 10/26/09 at 29. Thalia and Lazaros were unsuccessful in obtaining financing, were unable to buyout Angelo for $150,000, and were unable to make the required payments. Id. at 28-29. In December 2004, Lazaros was killed in a car accident. Id. Thereafter, Thalia did not make any payments under the agreement. In February 2006, Angelo sold the property for $375,000. Id. at 29. He did not pay Thalia any of the proceeds from the sale. Id.

The parties also testified regarding various sums of money Angelo paid to Thalia and Lazaros, mostly prior to the agreement. N.T. 10/26/09 at 87-101 (Thalia); N.T. 10/27/09 (Vol. I) at 8-9, 22-25, 75, 86-89 (Angelo). The sums were paid by check, one for $5,000 made payable to Thalia and the remainder made payable to Lazaros, but all of them were endorsed and deposited by Thalia into her bank account, which she and Lazaros used for personal expenses. N.T. 10/26/09 at 95; N.T. 10/27/09 (Vol. I) at 57. The words "personal loan" were written on the face of the majority of the checks. Id.

Angelo requested that the jury be instructed that it could set off amounts Angelo owed under the agreement by amounts Thalia owed Angelo based on the loans. Over Thalia's objection that there was insufficient evidence that she owed any debt to Angelo, I instructed the jury that it should determine whether Angelo proved the affirmative

defense of set-off by a preponderance of the evidence and, if do, the amount of the set-off. <u>N.T.</u> 10/27/09 (Vol. II) at 37-40, 82-83.

On October 27, 2009, the jury returned a defense verdict. Specifically, in answers to interrogatories, the jury found that Thalia had proven her breach of contract claim by a preponderance of the evidence and awarded damages in the amount of $90,000. <u>See</u> Doc. 49 at Nos. 1-2. The jury further found that Angelo had proven his affirmative defense of set-off by a preponderance of the evidence, and determined the amount of the set-off to be $94,000. <u>Id.</u> at No. 4. Based on the jury's determination, I entered judgment in favor of Defendant Angelo on October 29, 2009. <u>See</u> Doc. 48.

On November 10-11, 2009, the parties filed the present post-trial motions. <u>See</u> Docs. 53-55. In addition, defense counsel filed a motion to withdraw as attorney. <u>See</u> Doc. 56. On November 16, 2009, following a hearing, I denied the motion to withdraw and gave the parties until November 30, 2009, to respond to the remaining post-trial motions, and until December 7, 2009, to file any replies. <u>See</u> Doc. 59. The parties complied with these deadlines and the remaining post-trial motions are now ripe for review.

## II.     <u>DISCUSSION</u>

### A.     <u>Thalia's Motion for Entry of Judgment Pursuant to Rule 50(b)</u>

In this motion, Thalia argues that, notwithstanding the jury's determination, she is entitled to judgment as a matter of law, renewing her argument at trial that the evidence

of set-off was insufficient to go to the jury. Federal Rule of Civil Procedure 50(b) provides that a party may file a post-trial motion for judgment as a matter of law. See Fed. R. Civ. P. 50(b). In ruling on a Rule 50(b) motion, courts must determine "whether viewing the evidence in the light most favorable to the nonmovant and giving it the advantage of every fair and reasonable inference, there is insufficient evidence from which a jury reasonably could find liability." Eshelman v. Agere Systems, Inc., 554 F.3d 426, 433 (3d Cir. 2009) (quoting Lightning Lube, Inc. v. Witco Corp., 4 F.3d 1153, 1166 (3d Cir. 1993)). Judgment as a matter of law should be granted "where the record is critically deficient of the minimum quantum of evidence in support of the verdict." Id. (quoting Gomez v. Allegheny Health Servs., Inc., 71 F.3d 1079, 1083 (3d Cir. 1995)). "The question is not whether there is literally no evidence supporting the unsuccessful party, but whether there is evidence upon which a reasonable jury could properly have found its verdict." Id. (citing Gomez, 71 F.3d at 1083). Furthermore, "[i]n performing this narrow inquiry, we must refrain from weighing the evidence, determining the credibility of witnesses, or substituting our own version of the facts for that of the jury." Id. (citing Marra v. Phila. Hous. Auth., 497 F.3d 286, 300 (3d Cir. 2007)).

A set-off allows adjustments of mutual debts arising out of separate transactions between the parties. See Folger Adam Security, Inc. v. DeMatteis/MacGregor, JV, 209 F.3d 252, 259 (3d Cir. 2000) (set-off applies in "situations where both plaintiff and defendant have [claims] against each other . . . which can be mutually deducted whenever

either one begins a suit against the other."). "Under Pennsylvania law, a set-off is accomplished when a creditor gives 'sufficient evidence of intent' to make a set-off.'" IRS. v. Norton, 717 F.2d 767, 772 (3d Cir. 1983) (quoting Goldstein v. Jefferson Title & Trust Co., 95 Pa. Super. 167, 170 (1928)). Also under state law, "the retention of a debtor's funds by a creditor provides sufficient evidence of an intent to set-off." Id. (citing Pittsburgh Nat'l Bank v. United States, 657 F.2d 36 (3d Cir. 1981)).

Thalia argues that the jury's verdict regarding set-off was unsupported because all of the evidence at trial, with the exception of a single check for $5,000 made out to her, showed that the loans at issue were made by Angelo to his brother Lazaros, with no expectation or agreement that the sums would be repaid by Thalia. See Doc.53 at 7-9; Doc. 67 at 1-7. In support of this argument, Thalia relies on testimony elicited from Angelo during the defense case in which Angelo repeatedly testified that he loaned money to his brother. Typical of such testimony is the following:

> Q: Now can you tell me, at the time that Thalia was together with Lazaros, did there come a time when you started lending Lazaros a lot of money?
>
> A: Yes. . . . [H]e run out of the money he got, and at one point around 2000, he started asking for money.
>
> Q: And did he agree to pay you this money back?
>
> A: Yes. He did agree. And, as a matter of fact, I had the specific discussions that, I'll give you the money, however, you have to remember, now I'm married, I may retire, if things don't go well with IBM, and I may need the money quickly.

6

Q:      And did he agree?

A:      Yes.

Q:      And did you charge your brother interest?

A:      No.

Q:      And is that why on these checks we've seen, you wrote personal loan?

A:      Yes, sir.

* * * *

Q:      Sir, this is from you and your wife's account, $10,000. It says personal loan, and it's endorsed by Thalia. Was this a loan that you made to your brother?

A:      Yes, sir.

Q:      Did he promise to pay it back?

A:      Yes.

* * * *

Q:      Sir, I think you testified that this was a bank check that you secured and gave to Lazaros, right?

A:      Yes.

Q:      What was it for?

A:      It was a loan to my brother.

N.T. 10/27/09 (Vol. I) at 8-9, 24-25, 75. In addition, Angelo testified that he didn't know that Thalia and Lazaros were married, id. at 57, and he conceded the possibility that

Thalia may not have known that the money she and Lazaros received in the form of checks from Angelo belonged to Angelo and not to Lazaros.  Id. at 89-90.  Based on such trial testimony, Thalia argues that the loans (with one $5,000 exception) were made exclusively between Angelo and his brother Lazaros, that there was never any agreement that Thalia would repay the loans, and that the jury's finding to the contrary is therefore baseless.

Angelo counters that the there was ample evidence at trial for the jury to have rendered a verdict in his favor on the issue of set-off.  See Doc. 66 at 3-12.  For example, Thalia repeatedly stated that she and Lazaros were the recipients of multiple checks from Angelo to pay their personal living expenses during their marriage; that she endorsed and deposited all of the checks, many of which were marked "personal loan," into her own bank account; and that she personally benefitted from the payments.  See, e.g., N.T. 10/26/09 at 95; N.T. 10/27/09 (Vol. I) at 57.  For example, Thalia testified as follows:

> Q:    When did you first get together with Lazaros?
>
> A:    The end of 1997.
>
> Q:    And is it fair to say that when he would bring checks that made payable to Lazaros with the word "personal loan" there, you'd put them in your checking account to pay your living expenses, correct?
>
> A:    Our living expenses.
>
> Q:    Ours being yours and Lazaros[']?
>
> A:    And Lazaros.

\* \* \* \*

Q:      This is [the check dated] November 2nd, 2004, correct?

A:      Yes.

Q:      Shortly after this agreement, correct?

A:      Yes.

Q:      And it's – you agree this $20,000 came from [Angelo] to Lazaros and then if we turn the document, that's your signature on the check, isn't it, ma'am?

A:      Yes.

Q:      And the account number there . . . that's your Wachovia account, isn't it, ma'am?

A:      That's correct.

Q:      And that's the same account we've seen you paying the expense for these buildings out of, isn't it, ma'am?

A:      Yes.

Q:      It's the same account you were paying your living expenses out of, correct?

A:      Our living expenses, yes.

\* \* \* \*

Q:      Do you see this check [Exhibit 12], ma'am?

A:      Yes.

Q:      It says right here "personal loan," yes?

A:      Yes.

Q:     It's payable to Lazaros?

A:     Yes.

Q:     You were together with Lazaros then?

* * * *

A:     Oh, yes, we were living together.  I'm so sorry.

Q:     And so this money would have gone into your joint
       account to pay your living expenses, yes?

A:     Yes, our living expenses.

N.T. 10/26/09 at 87-88, 99-100.  There was also evidence that Angelo told Thalia in a

letter after Lazaros died that he (Angelo) had claims against Thalia for repayment of the

loans.  N.T. 10/27/09 (Vol. I) at 44-45.

In her reply memorandum, Thalia argues that Angelo misunderstood or misstated

his burden of proof on the affirmative defense of set-off.  See Doc. 67 at 1-7.  It is true

that defense counsel stated that the burden of proof rested with Thalia and not with

Angelo.  See, e.g., N.T. 10/27/09 (Vol. II) at 57 ("[W]e don't have to prove anything"),

59 ("I have no burden or proof").  However, when referring specifically to set-off,

defense counsel correctly stated that the defense had the burden.  Id. at 63-64.  Also, I

explained to the jury that Angelo was required to prove his affirmative defense of set-off

by a preponderance of the evidence, including that there was an agreement between

Thalia and Angelo to repay some or all of the loans.  Id. at 82-83.  In addition, the verdict

sheet repeated that Angelo had to prove set-off by a preponderance of the evidence.  See

Doc. 49 at No. 4.  Under the circumstances, it cannot be said that the jury misunderstood Angelo's burden of proof on the issue of set-off.

The conflicting evidence in this case required the jury to make credibility determinations as to Thalia and Angelo's testimony.  In addition to testimony regarding the check sums and their purpose, the jury saw images of the checks, many of which were marked "personal loan" and all of which were endorsed by Thalia and deposited into her bank account for her and Lazaros's personal use.  In addition, the jury heard Thalia's testimony that she believed that Angelo was holding over $500,000 of Lazaros's money, and that the checks from Angelo were drawn from this sum.  N.T. 10/26/09 at 64, 83, 101.  The jury was free to make fact-finding and credibility determinations based on this evidence, including whether Angelo was actually holding Lazaros's money for him (which the jury rejected) and whether there was an understanding that Thalia as well as Lazaros would pay back Angelo the money he lent for their living expenses (which the jury accepted).

Thus, upon review of all the evidence, the jury was entitled to find that Angelo had a legitimate claim to Thalia's repayment of the loans he made to her and Lazaros.  See Folger Adam Security, Inc., 209 F.3d at 259; Norton, 717 F.2d at 772 (referring to Pennsylvania law on set-off).  Therefore, I find that ample evidence existed at trial upon which a reasonable jury could properly have found the verdict rendered, and I will deny Plaintiff's Rule 50(b) motion.  See Eshelman, 554 F.3d at 433.

**B.     Thalia's Motion to Alter or Amend Judgment Pursuant to Rule 59(e)**

In this motion Thalia seeks an award of $19,854.25 in prejudgment interest.  <u>See</u>

Fed. R. Civ. P. 59(e) (post-trial motions to alter or amend must be filed within ten days of

the entry of the judgment).  As a preliminary matter, Angelo disputes that a Rule 59(e)

motion is a proper vehicle for the motion, arguing that Thalia should instead be seeking

reconsideration or re-argument pursuant to Local Rule 7.1(g), and that she has failed to

state any basis for relief under than rule.  <u>See</u> Doc. 65 at 2; <u>see</u> <u>also</u> Local R. Civ. P.

7.1(g) ("Motions for reconsideration or reargument shall be served and filed within ten

(10) days after the entry of the judgment, order, or decree concerned.").  Contrary to

Angelo's position, the Supreme Court has explicitly held that Rule 59(e) is the proper

avenue by which a party must seek prejudgment interest.  <u>See</u> <u>Osterneck v. Ernst &</u>

<u>Whitney</u>, 489 U.S. 169, 174-76 & 176 n.3 (1989) (holding post-trial motion for

discretionary prejudgment interest constitutes a Rule 59(e) motion, and stating in dicta

that a motion for prejudgment interest as of right should also constitute a Rule 59(e)

motion).  Therefore, I find that the present motion is properly brought pursuant to Rule

59(e).

Under Pennsylvania law,[3] prejudgment interest is generally awarded as a legal

right in contract cases.  <u>See</u> <u>Parexel Int'l Corp. v. Feliciano</u>, No. 04-3798, 2008 WL

---

[3]There is no dispute among the parties that Pennsylvania law applies to this
diversity contract action.

12

5467609, *3 (E.D. Pa. 2008) (Joyner, J.) (citing Fernandez v. Levin, 548 A.2d 1191, 1193 (Pa. 1988)); Amerisourcebergen Drug Corp. v. Meier, No. 03-6769, 2005 WL 1213913 (E.D. Pa. 2005) (Surrick, J.) ("In a contract action, the award of prejudgment interest is not a matter of discretion, but is a legal right.").  Because Thalia prevailed on the jury interrogatories related to her breach of contract claim in the amount of $90,000, see Doc. 49 at Nos. 1-2, she argues that she is entitled to prejudgment interest on that amount.

However, Thalia's argument does not acknowledge that there are exceptions to the award of prejudgment interest in contract actions, nor does she factor in the entirety of the jury interrogatories.  The Pennsylvania Supreme Court has adopted the Restatement (Second) of the Law of Contracts in determining precisely when interest is recoverable in contract actions.  See North Am. Specialty Ins. Co. v. Chi-Chester Sch. Distr., No. 99-2394, 2002 U.S.Distr. LEXIS 11730, at *20 (E.D. Pa. Jan. 3, 2002) (Smith, M.J.) (citing Penneys v. Pennsylvania R.R. Co., 183 A.2d 544, 546 (Pa. 1962)).  Section 354 of the Restatement (Second) provides:

> (1)   If the breach [of a contract] consists of a failure to pay a definite sum of money or to render a performance with fixed or ascertainable monetary value, interest is recoverable from the time of the performance on the amount due *less all deductions to which the party in breach is entitled*.
>
> (2)   In any other case, such interest may be allowed as justice requires on the amount that would have been just compensation had it been paid when performance was due.

Id. at *20, 29-30 (quoting Restatement (Second) of Contracts § 354(1)-(2)) (emphasis added). This language is consistent with Pennsylvania law regarding the purpose of prejudgment interest. See Touloumes v. E.S.C., Inc., 899 A.2d 343, 349 (Pa. 2006) ("[I]n a breach of contract action, prejudgment interest is the appropriate vehicle to secure monies for the delay of relief.") (citing Penneys, 183 A.2d 544).

The language from the Restatement (Second) is also consistent with the Supreme Court's characterization of prejudgment interest as 'an element of [plaintiff's] complete compensation,'" see Osterneck, 489 U.S. at 175 (quoting West Virginia v. United States, 479 U.S. 305, 310 and n.2 (1987)), and with Third Circuit caselaw reflecting "a strong presumption in favor of awarding prejudgment interest, except where the award would result in unusual inequities." Shovlin v. Timemed Labeling Sys., Inc., No. 95-4808, 1997 WL 102523 *1 (E.D. Pa., Feb. 28, 1997) (quoting Booker v. Taylor Milk Co., 64 F.3d 860, 868 (3d Cir. 1995)). In short, federal law, like Pennsylvania law, recognizes that prejudgment interest plays an important part in fully compensating the aggrieved party in a breach of contract action for lost sums of money. See Starceski v. Westinghouse Elec. Corp., 54 F.3d 1089, 1101-02 (3d Cir. 1995) (purpose of prejudgment interest in contract case "is to reimburse the claimant for the loss of the use of its investment or its funds from the time of the loss until judgment is entered")

Here, in all of the cases cited by Thalia for the proposition that she is entitled to prejudgment interest on her contract claim as a matter of right, the party seeking

prejudgment interest prevailed at trial. However, Thalia did not prevail in this case and judgment was not entered in her favor. To the contrary, as previously explained, the jury found that although Thalia proved that Angelo breached their contract in the amount of $90,000, it also found that Angelo proved that he could set-off that amount by $94,000 that Thalia owed him based on the loans. See Doc. 49 at Nos. 1-2, 4. The net result of the jury's findings, based on interrogatories, is that the total loan amount Thalia owed Angelo was $4,000 more than the damages Thalia suffered as a result of Angelo's breach of the agreement. In the relevant language of the Restatement (Second), these loan amounts constitute deductions to which the party in breach (Angelo) was entitled. See Restatement (Second) at § 354(1). Stated differently, awarding prejudgment interest to Thalia under these circumstances would not serve to "secure monies for the delay of relief," see Touloumes, 899 A.2d at 349, nor would it constitute an element of her "complete compensation." See Osterneck, 489 U.S. at 175.

Moreover, a contrary finding would lead to the absurd result of Angelo having to pay nearly $20,000 in pre-judgment interest to Thalia, despite the fact that Angelo prevailed at trial. Because I conclude that Thalia is not entitled to pre-judgment interest on the $90,000 breach of contract claim, I will deny her motion to alter or amend judgment pursuant to Rule 59(e).[4]

---

[4]To the extent Angelo seeks pre-judgment interest on the $4,000 difference between the amount of the set-off as found by the jury ($94,000) and the amount of damages caused by Angelo's breach of the agreement ($90,000), see Doc. 65 at 4-5, such

### C.   Angelo's Motion to Alter or Amend Judgment and to Tax Costs Against Plaintiff

In the last motion, Defendant Angelo seeks to alter or amend the judgment pursuant to Rule 59(e), and to tax costs against Plaintiff.

### 1.   Angelo's motion to alter or amend judgment

As previously explained, the jury in this matter found that Thalia had proven her breach of contract claim and awarded damages in the amount of $90,000, but also that Angelo had proven his affirmative defense of set-off in the amount of $94,000.  See Doc. 49, at Nos. 1-2, 4.  Based on the jury's determination, I entered a judgment reading "Judgment is entered in favor of the Defendant based on the Jury's Answers to Interrogatories."  See Doc. 48.

In the first part of this motion, Angelo seeks to alter or amend the judgment to reflect the findings of the jury, specifically that judgment should be entered against Plaintiff in the amount of $4,000.  See Doc. 55 at 2-3 (not numbered).  I disagree.  As explained more fully in my Memorandum and Order dated October 26, 2009, in which I granted in part and denied in part Thalia's motions in limine, I permitted Angelo to argue set-off as an affirmative defense.  See Doc. 47.[5]  Because set-off was asserted at trial as

---

request must be denied because it was not made within ten days of the entry of judgment as required by Federal Rule 59(e) and Local Rule 7.1(g).  In any event, Angelo argued set-off as an affirmative defense against Thalia's claim, not a counter-claim on which Angelo could obtain damages.

[5]In her reply brief, Thalia reasserts her argument that the affirmative defense of set-off was not properly in the case.  See Doc. 64 at 6.  I considered and rejected this

an affirmative defense and not as a counter-claim, Angelo is not entitled to damages based on the jury's interrogatories.  See Fed. R. Civ. P. 8(a), (c)(1) (defining "[c]laims for relief" separately from "avoidance or affirmative defenses"); Jacobs v. Philadelphia, No. 03-0950, 2005 WL 1899499, at *14 n.14 (E.D. Pa. Aug. 8,. 2005) (Baylson, J.) ("Rule 8(c) enumerates many . . . affirmative defenses that a defendant may raise to escape liability. . .");  see also Black's Law Dictionary, 8th ed. (2004), at 451 (defining "affirmative defense" as "[a] defendant's assertions of facts and arguments that, if true, will defeat the plaintiff's . . .  claim, even if all the allegations in the complaint are true.")

## 2.   Costs pursuant to Rule 68

In the second part of this motion, Angelo seeks to tax costs against Thalia under two alternate theories.  First, he seeks an award of costs by virtue of Thalia's rejection of his Rule 68 offer of judgment made prior to trial.  Second, he seeks an award of costs as the prevailing party under Rule 54.  See Doc. 55 at 3-4 (not numbered).  He seeks the same cost figure under both theories.

Rule 68, captioned "Offer of Judgment," provides that "a party defending against a claim may serve on the opposing party an offer to allow judgment on specified terms." Fed. R. Civ. P. 68(a).  The rule further provides that "[i]f the judgment that the offeree

---

argument in the October 26, 2009, Memorandum and Order, see Doc. 47, and I repeated the ruling at the close of testimony.  N.T. 10/27/09 (Vol. II) at 26-27.  Having concluded that the jury's set-off finding was supported by sufficient evidence, I see no reason to revisit this issue at this time.

finally obtains is not more favorable than the unaccepted offer, the offeree must pay the costs incurred after the offer was made." Fed. R. Civ. P. 68(d). In other words, Rule 68 is triggered when the defendant makes an offer of judgment, the plaintiff rejects the offer, and the plaintiff ultimately prevails at trial, but is awarded an amount less than the amount of the offer of judgment. Rule 68 was designed to "prompt[] both parties to a suit to evaluate the risks and costs of litigation, and to balance them against the likelihood of success upon trial on the merits." Marek v. Chesney, 473 U.S. 1, 5 (1985).

Here, on June 24, 2009, Angelo presented Thalia with an offer of judgment in the amount of $5,000. See Doc. 32. Because judgement was subsequently entered in this case in favor of Angelo, based on the jury's interrogatories, Thalia (the "offeree") did not "obtain" a judgment as contemplated by Rule 68. See Fed. R. Civ. P. 68(d); Delta Air Lines, Inc. v. August, 450 U.S. 346, 351 (1981) (stating Rule 68 does not apply when judgment is entered in favor of a defendant); Woern v. K Mart Corp, 131 F.R.D. 98, 98-99 (E.D. Pa. 1990) (same). Because the jury's verdict did not trigger Rule 68, Angelo is not entitled to costs on this basis.

### 3.      Costs pursuant to Rule 54

Rule 54 provides in relevant part that "[u]nless a federal statute, these rules, or a court order provides otherwise, costs – other than attorney's fees – should be allowed to the prevailing party." Fed. R. Civ. P. 54(d); see also 28 U.S.C. § 1920 ("A bill of costs shall be filed in the case and, upon allowance, included in the judgment or decree."). To

determine whether a party is entitled to costs under Rule 54, the crucial inquiry is whether the party is the "prevailing party" for purposes of the Rule. See id. Thalia argues that she prevailed at trial because the jury found in her favor on the breach of contract claim, whereas Angelo did not prevail on his declaratory judgment action and did not obtain the full amount of the set-off he sought. See Doc. 64 at 2-5. Nevertheless, based on the jury's findings that Thalia was not entitled to any sum of money from Angelo, judgment was entered in his favor; he was clearly the prevailing party in the case. See, e.g., Nissim v. McNeil Consumer Prod. Co., 957 F.Supp. 604, 607 (E.D. Pa. 1997) (holding plaintiff who received zero back pay and compensatory damages was not the "prevailing party," even though jury found defendants had retaliated against him in violation of Title VII). Because Angelo was the prevailing party in this case, I conclude that he is entitled to costs pursuant to Rule 54.

On November 5, 2009, Angelo filed a timely Bill of Costs and Accompanying Declaration of Counsel with the Clerk of Court for the Eastern District of Pennsylvania pursuant to Local Rule 54.1(c). See Doc. 52; see also Local R. Civ. P. 54.1(c) ("Any party requesting taxation of costs by the Clerk shall give the Clerk and all other parties five (5) days' written notice of such request. The Clerk shall fix the time for taxation and notify the parties or their counsel."). The itemized Bill of Costs submitted to the Clerk of

Court totals $2,008.85.[6]  See id.  Because Angelo is the prevailing party and has properly

submitted a Bill of Costs consistent with Local Rule 54.1(c), I will grant this aspect of the

motion and direct the Clerk of Court to proceed accordingly.

## III.    CONCLUSION

I find that Plaintiff Thalia's post-trial motions are without merit and therefore the

motions will be denied.  I further find that Defendant Angelo's post-trial motion is

without merit as to his request to alter or amend judgment, but that he is entitled to costs

as the prevailing party pursuant to Rule 54.  Therefore, his motion will be denied in part

and granted in part, and I will direct the Clerk of Court to award Angelo's costs consistent

with his already-filed Bill of Costs, subject to defense counsel's clarification regarding

the total amount requested as discussed in footnote 6.  An appropriate Order follows.

---

[6]The itemized costs set forth in the present motion are identical to the Bill of Costs
submitted to the Clerk of Court.  See Docs. 52 and 55 at 6-7.  However, both appear to
contain a mathematical error.  In the Bill of Costs submitted to the Clerk of Court, the
amount claimed for witness appearance is $220, although the attached computation lists
the amount as $266.20.  Both the present motion and the Bill of Costs list a total sum of
$2,008.85.  However, if the correct witness cost is $266.20 rather than $220, the total
figure comes to $2,055.05.  Given this disparity, defense counsel will be directed to
clarify his Bill of Costs with the Clerk of Court.